UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MELISSA BRUMLEY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  CASE NO. 17-CV-677-AAT |
| | ) |
| **UNITED PARCEL SERVICE, INC.** | ) |
| | ) |
| **Defendant.** | ) |

PLAINTIFF'S RESPONSE IN OPPOSITION
AND COUNTER MOTION FOR SUMMARY JUDGEMENT

**Summary**

This is a disability discrimination case based upon a permanent work restriction. United Parcel Services doesn't know how to comply with the ADAAA, which is why they de facto violate the statute, and is why they actually cite Sutton Airlines in their brief. Sutton Airlines was specifically and loudly overturned by Congress in 2009. Perhaps, UPS "does not ever allow workers with permanent work restrictions", because they did not know Sutton Airlines was overturned.

In the present case, Ms. Brumley's primary classification was small sort. Ms. Brumley was released to small sort by her doctor. UPS was short handed in small sort and they needed her. Brumley clocked in to perform her job as a part time sorter. Yet, UPS sent her home for 3 months without pay, which is how long it took them to read, "May return to small sort".

1

This Court cannot issue a summary judgment in favor of the Defense for three reasons. First, UPS has credibility problems, because they testified under oath in a workers compensation case. Discriminatory intent is clear when UPS varies the small sort job description depending on the forum. Sort is a physically light job in the workers compensation hearing, but a heavy job for the purpose of ADA. Second, it is widely held whether a job duty is an "essential function" is a question of fact. A third question the jury must decide, is whether Ms. Brumley was bullied into lifting her restriction, or whether she did so voluntarily.

The Court can issue a summary judgment as a matter of law in favor of the Plaintiff on the legality of UPS policies and procedures. Two UPS companywide policies are de facto violations of the ADAAA. The most egregious policy is one used to avoid accommodation of permanent work restrictions. UPS claims an <u>essential function</u> of every employee is that that they must, at any time, be available to "substitute" in another employee's position. Said fiction, removes the ADA obligation to ever accommodate lifting restrictions. It necessarily excludes a class of the disabled from accommodation.

The second policy surrounds the disappearance of available accommodation when a work restriction transfers from temporary to permanent. The discrimination occurs when a disability that is temporary in nature is treated disparately from a disability that is exactly the same, but permanent. Thus, while reasonable accommodation exists when the restriction is temporary, UPS blocks the accommodation when the restriction becomes permanent. The accommodation is still available, but an arbitrary and discriminatory wall is thrown up to rid themselves of the disabled.

Finally, UPS cannot "accommodate" an injured worker with permanent work restrictions, by telling them the only way to return to work is to become "un-disabled". It is undisputed that HR personnel, Elveta Cooper did just that. Defendant's undisputed facts, relay said policy as follows:

> Cooper replied that, if Dr. Klekamp removed Brumley's lifting and driving restrictions, then Brumley could return to work without the need for an accommodation. (*Brumley*, 95:15-96:11). Brumley left the meeting planning to get her restrictions lifted, and UPS kept the interactive process open until it verified that her restrictions were lifted. (*Brumley*, 198:23-199:8). Defense undisputed fact. (UDF 12)

I. United Parcel Services, Inc. violates the antidiscrimination policy found in the Americans with Disabilities Act, Amendment Act (ADAAA) when UPS does not allow permanent work restrictions.

Under the Americans with Disabilities Act, no covered entity shall discriminate against a qualified individual with a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C.S. § 12112(a). Pursuant to ADA 42 USC §12101, Ms. Brumley was an employee and a member of a protected class. At all times UPS, Inc. qualified as an employer with more than 15 employees. UPS discriminated against Ms. Brumley based upon her disability, when they sent her home without pay because of a permanent work restriction. Discriminatory intent is proven by the statements made by Richard Bonee. (UDF 47, 48)

The UPS physician performed a functional capacity test, was well aware of her job requirements, and he returned her to work with permanent work restrictions that were within her classification of small sort. (Undisputed Fact Number 15, 30, 42, and 45(hereafter referred to as UDF). She clocked in, and was loudly told in the middle of a room in front of 3 witnesses, "UPS

3

does not allow permanent work restrictions". (UDF 47, 48,) Small sort supervisor, James Jackson was ready to schedule her on small sort, and in fact needed her. (UDF 50).

To recover for discrimination under the Americans with Disabilities Act, Ms. Brumley must show that she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability. In the present case, Richard Bonee provided direct evidence when standing in the middle of the room and loudly telling Ms. Brumley to clock out because UPS "does not allow permanent work restrictions". (UDF47, and 48)

A.  Disabled requirement

First, the plaintiff must establish a prima facie case by showing "that [s] he is disabled and otherwise qualified for the position, either with or without reasonable accommodation." Keith v. Cnty. of Oakland, 703 F.3d 918, 923 (6th Cir. 2013). Ms. Brumley had a permanent disability in the form of a work restriction of no lifting over 30 pounds and no driving. (UDF 6 and 15) However, the Court need not reach this question because UPS regarded her as disabled, thus fulfilling this requirement. (UDF 54)

Mr. Bonee made Ms. Brumley clock out on or about July 29, 2016 for one reason, her permanent work restriction.(UDF 47 and 48) He refused to let her work until all restrictions were lifted on or about October 31, 2016. UPS is well aware, that a permanent work restriction is a perceived disability, when they precluded her from each and every positon at UPS because of her lifting restrictions. Watts v. UPS, 378 Fed. Appx. 520, U.S. App. LEXIS 10257, 2010 FED App. 0310N (6th Cir. 2010). "When a defendant flatly bars a plaintiff from working at any job at the defendant's company, that is generally sufficient proof that the employer regards the plaintiff as

4

disabled in the major life activity of working so as to preclude the defendant being awarded judgment as a matter of law" Watts at 526. *See also*, 42 U.S.C.S. § 12102(2)(C). [1]

2. Essential functions

Next, Ms. Brumley was " (2) otherwise qualified to perform the essential functions of the position, with or without accommodation". Her work release from the UPS doctor actually states, "may return to local sort". (UDF 45) Said medical opinion in the only evidence in front of this Court on Ms. Brumley's qualifications to return to her job. All packages in small sort are ten pounds or less, and most are letters and smaller packages. (UDF 17 and 18). They must be small enough to fit through a small shute. (UDF 19).

UPS claims an essential function of small sort is lifting 75 pounds based upon two arguments. First, UPS claims Ms. Brumley might be required to "temporarily fill in" for other employees as a temporary cover driver. Ms. Brumley' job classification per the union was small sort. (UDF 16). While classified separately from all other sort in the Union contract, (UDF 25), small sort has no formal written description. (UDF 23) A part time cover driver is not an essential function for small sort and because "Part-time employees" are precluded from working as drivers by the Union. (UDF 31). One exception is that a part time employee "may" work as a temporary cover driver. (UDF 32) Temporary cover drivers may not be used to supplement the driving force. (UDF 33). The tenuous nature of a temporary cover driver, job description, and fact that MS. Brumley no longer performs same, are all evidence that TCD is not an essential function of small sort.

---

[1] Here, Plaintiff's medical conditions did cause impairment to major life activities such as working as a delivery driver or lifting over 30 pounds, but she was otherwise qualified to work in sort.

5

Second, UPS claims all personnel in the hub must be able to lift 75 pounds in the off chance that they are needed at a different job. Plaintiff refers to this requirement as the "substitute possibility". This "substitute possibility" is a fiction that UPS relies upon to forever avoid the accommodation requirements of the ADAAA. Unlike other companies, UPS forever excuses themselves from accommodating an entire class of disability, i.e. those with lifting restrictions. Clearly, small sort does not require Ms. Brumley to lift 75 pounds. While UPS provides a "job description", said description includes much heavier jobs and there is no delineation. (UDF 24, 25, and 26) Ms. Brumley has never lifted 75 pounds in small sort. (UDF 30). Supervisor Grissom describes it as a light job. (UDF 16, 18). Again, Bonee testified that small sort "might" fill the mail bags to the top, but Ms. Brumley having performed the job for 5years, says using one bag or three is entirely up to the sorter. (UDF 20) AS there here is no requirement to fill mail bags to the top, Plaintiff can fill 3 bags at 25 pounds. (UDF 20) This was a discussion that should have taken place on July 29, 2016, had UPS been acting in good faith.

The Sixth Circuit holds that a question of "essential function" is a jury question. In Keith v. Cnty. of Oakland, 703 F.3d 918, 923 (6th Cir. 2013), the Sixth Circuit states whether a job function is essential "is a question of fact that is typically not suitable for resolution on a motion for summary judgment." Keith, 703 F.3d at 926. Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires. The term . . . does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential because (1) the position exists to perform the function, (2) a limited number of employees are available that can perform it, or (3) it is highly specialized. Id. § 1630.2(n)(2). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." Keith at 925 and 926; *see also* D'Angelo v. ConAgra Foods, Inc., 422 F.3d

6

1220, 1230 (11th Cir. 2005), E.E.O.C. v. Ford. Motor Co., 782 F.3d 753, 762 (6th Cir. 2015) (*en banc*) (applying the regulatory factors to determine if a particular work function was essential); and 29 C.F.R. § 1630.2(n).[2]

Even though a jury question, UPS's position makes no sense, as Plaintiff clocked in to work small sort. (The hours, the wages, the time of day are all different for small sort). Thus, Plaintiff was clearly not trying to work as a temporary cover driver.  It is well settled that at the summary judgment stage, the employer's judgment will not be dispositive on whether a function  is essential when evidence on the issue is "mixed."  Keith, 703 F.3d at 926; *see also*, Feldman v. Olin Corp., 692 F.3d 748, 755 (7th Cir. 2012). If an employer's judgment about what qualifies as an essential task were conclusive, "an employer that did not wish to be *inconvenienced* by making a reasonable accommodation could, simply by asserting that the function is essential to avoid the clear congressional mandate that employers make reasonable accommodations." Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1258 (11th Cir. 2007) (quoting 42 U.S.C. § 12112(b)(5)(A)) (internal quotation marks omitted).

Written job descriptions are also not dispositive. *See* Davidson v. Am. Online, Inc., 337 F.3d 1179, 1191 (10th Cir. 2003) ("[A]n employer may not turn every  condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.").  This is especially true when UPS's proffered written job description covers multiple jobs other than small sort. (UDF 24).

---

[2] Factors to be weighed by a jury: "the employer's judgment and written description of the job". 42 U.S.C. § 12111(8); the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the terms of a collective bargaining agreement: the work experience of past incumbents in the job; and/or; the current work experience of incumbents in similar jobs.29 C.F.R. § 1630.2(n)(3)(iii)-(vii).

Nonetheless, to overcome summary judgment, the Plaintiff generally must identify the specific job [s] he seeks and demonstrate that [s]he is qualified for that position." Id. UPS claims an essential function small sort is that "it is more efficient" to fill the mail bags to the top. They do not state it is an essential function to fill the mail bags to the top, nor can they. (UDF 21) Small sort personnel have 100% control on how full a bag is before transferring it to pick up. (UDF 20) Thus, an employee with a lifting restriction of 30 pounds has the absolute right to fill the mail bags half way as she is in complete control. (UDF 20)

The UPS "substitute possibility" policy violates the ADAAA as matter of law. Whether a company policy violates the ADAAA is a question of law and is a proper question for this court in the summary judgment phase. The facts of the current case are a clear example of this violation. Ms. Brumley was cleared by the UPS doctor to work small sort. (UDF 42, 45) The one and only reason she was sent home, was pursuant to a company policy that she "might" be called as a substitute to work as a temporary cover driver. (UDF 28, 29). Pursuant to this policy, Mr. Bonee made it clear to Plaintiff and to all other workers, that they would not have a job if there were work restrictions. (UDF 28, 29, 47, 48) UPS presents a company requirement that all workers must be available for all positions. (Whether needed or not and whether actually ever required to work elsewhere). Said position eliminates any obligation to accommodate a lifting restriction below 75 pounds, and eliminates the need to search for accommodation on this class of the disabled.

Companies, nationwide, could simply avoid accommodation by enacting a "substitute possibility" as an essential job function. Such a policy, if enacted by all companies, renders the ADA protections for injured workers meaningless. Such a policy basically informs all UPS workers, that if you have any lifting restriction below 75 pounds, you will lose your job. So said, Elveta Cooper in HR to Melissa Brumley on or about October 11th of 2017. (UDF 12) Upon

hearing there would be no accommodation based upon this "be ready in case you are needed to substitute", Ms. Brumley was instructed to lift her restrictions or lose her job. (Ms. Brumley immediately called her doctor, set an appointment and had her restrictions lifted in a fiction.) (UDF 12) Thus, UPS required Ms. Brumley to lift her disability. UPS argues that lifting the restriction was Ms. Brumley's idea. Said argument makes no sense, given she filled out the paperwork, attended the meeting, and filed this lawsuit. She lifted the restriction to return to work because it was the only way to save her possition.

If "substitute ready" is an essential function of the job, an employee who is able to perform their usual and customary job can be sent home. (And in this case was). A speculative, "someday", "perhaps", "maybe", or maybe never cannot be an "essential function", as a matter of law. Plaintiff requests summary judgment that this policy de facto violates the ADAAA in her case.

B. Undue hardship

Once the plaintiff has established she was disabled, but was able to perform the essential functions of her position, "the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." <u>Monette v. Elec. Data Sys. Corp</u>., 90 F.3d 1173, 1186 (6th Cir. 1996), abrogated on other grounds by <u>Lewis v. Humboldt Acquisition Corp</u>., 681 F.3d 312, 315-16 (6th Cir. 2012) (*en banc*). Undue hardship is <u>not</u> equal to inconvenient.

Plaintiff is entitled to her own summary judgment, as UPS has no basis to prove an undue hardship in placing her in small sort. Indeed, the undue hardship was sending her home. Supervisor Jackson needed her and the position was open. (UDF 46, 49, 59) Manager Richard Bonee even texted "good deal", when she was released to small sort. (Plaintiff Exhibit one). He

9

was using drivers at a much higher pay rate to cover small sort. Her ability to be "substitute ready" as a cover driver in no way affected her ability to perform her usual and customary duties in sort, nor does UPS claim any. A cover driver is not an essential function of small sort. This fiction is further seen, when Plaintiff continues to work small sort but has worked as a temporarycover driver since January of 2017. (UDF 39).

> II. The UPS accommodation process is a form over substance procedure that violates their Union agreement in bad faith, and purposefully serves to unreasonably delay a return to employment.

It unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." *Id*. § 12112(b)(5)(A). An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8).

To provide a reasonable accommodation, an employer may be required to modify the responsibilities of a disabled employee's existing job or transfer the employee to a vacant position with different responsibilities. *See* 29 C.F.R. § 1630.2(o); Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 870 (6th Cir. 2007). If an employee seeks to stay in his or her current job, the term reasonable accommodation means: "Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position [to stay in the position]." 29 C.F.R. § 1630.2(o). A suggested accommodation is not

10

Case 3:17-cv-00677   Document 21   Filed 12/05/17   Page 10 of 14 PageID #: 210

reasonable if it requires eliminating an "essential" function of the job. *Id*.; *see also* 42 U.S.C. § 12111(8).

While there is no time frame, UPS is governed by participating in the process "in good faith". There is no legal reason why Ms. Brumley was not returned to small sort on July 29, 2016.[3] The Union contract required UPS to address accommodation at the Hub on the day Ms. Brumley returned, yet they sent forms to Jürgen in Kansas. (UDF 34, 53, 56, 57, 58, 59)

UPS first implies, Ms. Brumley did not request accommodation. (After also arguing she was not disabled). This argument is nonsense, in light of her clock in, her request to work, and her filing of grievances to work. (UDF 63) Does UPS claim accommodation cannot be requested through the supervisor? If so, that would be another country wide UPS policy that violates the ADA.

Not only does the ADA allow informal requests for accommodations, the Union agreement with UPS requires same. (UDF 56, 57) The Union agreement states, the accommodation process should take place at the hub, with the union and management. (id) UPS had ample opportunity on the day Ms. Brumley was released. The accommodation process, per the Union contract, should have taken place on July 29, 2016. (UDF 57). Instead, Ms. Brumley had to continually ask for the accommodation/or job through 8 grievances over a two month period. (UDF 63). All the while, Jürgen was sending her forms from Kansas so her doctor could once again write, "May return to local sort". These forms were in no way reasonable or necessary to the issues which should have been resolved on July 29, 2016.

---

[3] UPS asked Ms. Brumley multiple questions that require legal conclusions during her deposition. It is clear, Ms. Brumley does not understand her rights nor the various legal terms thrown at her during the deposition. This lack of knowledge is the reason Ms. Brumley needed counsel to represent her.

11

Ms. Brumley arrived at the scheduled time for local/small sort. (49). UPS had a functional capacity test in hand. (UDF 43) UPS had a doctor excuse specifically stating, "May work in small sort", (UDF 51 and Plaintiff Exhibit one) the Union steward was present. (UDF 28, 29). Mr. Jackson, her direct supervisor in small sort, was present and wanted her to work. (UDF 46). Instead, they violated the ADA, sent her home, left her sitting at home without pay for the August, September, and October, while "Jürgen" in Kansas pushed paper. (UDF 28, 29, 30, 47, 48, 53, 61) While UPS studied the phrase, "may return to local sort" for three months, a position remained open and ready for Ms. Brumley within her restrictions. All of this was a de facto violation of the Union Contract (UDF 56, 57, 58, 59)

UPS offers no evidence of hardship in allowing Ms. Brumley to perform the join small sort for which she was well qualified, for which was open, and for which a worker was needed. (UDF 46) UPS cannot argue good faith, when they had a functional capacity test in hand, release to small sort in hand, and a signed medical report from their own doctor releasing her to local sort. (UDF 48, 49, 50, 51, ).Therefore, a company policy requiring "Jürgen" in Kansas to transfer said information to an internal company form, delays accommodation in bad faith, and thus violates the ADAAA.

There is no genuine issue of material fact for a jury when UPS violated their own contract with the Union, and Plaintiff requests a summary judgment in her favor on the failure to accommodate her from July 31, 2016 through October 31, 2016.

///

///

12

Case 3:17-cv-00677  Document 21  Filed 12/05/17  Page 12 of 14 PageID #: 212

III. As a matter of law, UPS did not act in good faith, when they violated the Union contract, which requires the interactive process at the Hub level.

The Union contract requires UPS to deal with the local union on the issue of accommodation. UPS did not question supervisor James Jackson, who knew the job requirements and was shorthanded. Not only does the "paperwork" in Kansas make no sense, it violates the expedience bargained for by the Union. UPS claims the Plaintiff stopped the accommodation process. Plaintiff claims UPS used the paper shuffle process along with supervisor bullying, to break down the process. If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdowns. Rorrer v. City of Stow, 743 F.3d 1025, 2014 U.S. App. LEXIS 3592, 2014 FED App. 0038P (2014 6th Cir.), 29 Am. Disabilities Cas. (BNA) 447, 16 Accom. Disabilities Dec. (CCH) P16-005, 2014 WL 715782. There is a genuine question of material fact as to who caused the "breakdown". Plaintiff claims, Mr. Bonee made it clear that she would not return to that Hub with restrictions. (UDF 28, 29, 47).

Richard Bonee clearly held the Plaintiff's position hostage, when he implemented policy of "no work restrictions". (UDF 28, 29, 30). UPS failed to have the conversation on July 29, 2016 when everyone was present, the medical report and functional capacity tests were in UPS's possession, the Union was present, and the supervisor was present.

> Elveta Cooper admits to violating the ADA. A company simply cannot "accommodate" a disability by instructing the disabled to "get rid of it", "lie about it", or pretend one doesn't have it". That is NOT accommodation. That is precisely what UPS did, when instructing Ms. Brumley that she could only return to work, if her doctor lifted her restrictions. In the final meeting, Cooper tells Ms. Brumley she can have her job, if her doctor will, in effect, withdraw her disability. "Cooper replied that, if Dr. Klekamp removed Brumley's **lifting** and driving restrictions, then Brumley could return to work without the need for an accommodation. (Defense undisputed fact 12) (*Brumley*, 95:15-96:11). Brumley left the meeting planning to get her restrictions lifted, and UPS kept the interactive process open

13

until it verified that her restrictions were lifted.  (*Brumley*, 198:23-199:8)."(UDF 12).

## Conclusion

Plaintiff was bullied by an 81 billion dollar company, to remove her disability for the right of a paycheck.  This is a blatant violation of the ADA protections, and Plaintiff asks the Defendants Summary Judgement be dismissed.  Plaintiff asks an order issue by the Court finding summary judgment in Plaintiff's favor, in that the two policies complained of are a discriminatory as a matter of law.

**Withdrawal of claim:**

Plaintiff withdraws her claim for workers compensation retaliation, as her claims can fall squarely within the ADA component and retaliation adds no new damages.

**Withdrawal of Claim:**

Plaintiff withdraws her claim for FMLA violations as said claims fall squarely within the ADA component and add no new damages.

RESPECTFULLY SUBMITTED:	s/ Constance Mann
_____
Constance Mann
The Law Offices of Constance Mann
TN BPR # 014616
CA BPR # 16564

1107 Battlewood Street
Franklin, TN 37069
(615) 724-1800
cmannlaw@msn.com
Attorney for Plaintiff, Melissa Brumley